**Jacob L. Kesner v. World's Fair Hippodrome, Amusement, Ballet, Pantomime and Fireworks Company, for the use of Samuel L. Winternitz and Ludwig Eisner.**

1. CORPORATIONS—*Contracts of—Subscription to Stock.*—Courts incline, without reference to formality, where the intent to become a subscriber to the capital stock of a corporation is manifested, to hold that the contract of subscription subsists, and a person becoming obligated as a subscriber can not, as against creditors of the corporation, be released by the mere consent of the corporation.

2. SAME—*Parties Dealing with, May Rely on Subscription List.* — Parties dealing with a corporation have a right to rely upon the evidence contained in its organization papers filed in the office of the secretary of state, as to who are subscribers for its stock.

**Garnishment Proceeding.**—Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed January 22, 1896.

### STATEMENT OF THE CASE.

At the July term, 1893, of the Superior Court of Cook County, Winternitz and Eisner obtained a judgment against the World's Fair Hippodrome, Amusement, Ballet, Pantomime and Fireworks Company of Chicago for $500 and costs of suit, upon which execution was issued and returned "No property found."

November 11, 1893, garnishment proceedings, based upon the aforesaid judgment, were begun against appellant for the purpose of reaching a supposed indebtedness from appellant to said company upon an alleged subscription by appellant for $500 worth of the stock of said company.

November 24, 1893, interrogatories were filed in the garnishment proceeding. Appellant filed his answers to such interrogatories, and appellee filed replication to such answers, alleging that appellant had not, by his answers to such interrogatories, truly discovered the credits, etc., in his hands.

The second, seventh and eighth interrogatories to the garnishee and his sworn answers thereto, respectively, are as follows:

"2d. Were you indebted to said company (World's Fair Hippodrome, Amusement, Ballet, Pantomime and Fireworks Company of Chicago) at the date of the service of said writ of attachment? If so, how much, for what due, and when payable? A. Early in the year 1893, I subscribed for five shares of one hundred dollars ($100) each of the capital stock of the World's Fair Hippodrome, Amusement, Ballet, Pantomime and Fireworks Company of Chicago, upon the representation of said company, and with the understanding and agreement that the incorporation and organization of such company should be completed in due form of law. None of the stock of said company was ever issued to me or to any person for me, and after repeated demands for the issuance of the same, I, being unable to

obtain said stock, gave due notice to said corporation to cancel my subscription therefor, and thereupon it was expressly understood and agreed by and between the president of said company and me that such subscription should be canceled, and I should be released from liability therefor. And the completion of the organization of said company was thereupon abandoned, and the organization thereof was never completed, as I am informed and verily believe, and no business was ever done or transacted by said company. I was not one of the organizers or incorporators of said company, and had no further or other transactions or connection with said company than as above set forth.

7th. For how many shares of the capital stock of the said World's Fair Hippodrome, Amusement, Ballet, Pantomime and Fireworks Company did you subscribe? A. Answered in answer to second interrogatory.

8th. How much, if anything, in all, have you paid on account of said stocks? A. Nothing.

Q. Now, Mr. Kesner, you may state whether or not you ever received any of the stock of this corporation in any shape or form? A. I never did.

＊   ＊   ＊   ＊   ＊   ＊   ＊

Q. Was you ever an officer of this corporation? A. No, sir; if I might have the privilege to tell the judge, this man Stock put my name down on this corporation paper while I was in New York attending to business. He had seen me previous to that, and I had agreed that if the thing went through, I would take $500 worth of the stock. ＊ ＊ ＊ When I got back from New York he came in and told me that he put me down for $500 of stock. I never signed any.

Q. Did you authorize the use of your name in any way in connection with the business of this corporation?

(Objected to.)

THE COURT: That is a conclusion. He can state what he said, if anything, to Stock about signing his name as a subscriber.

MR. HULL: Answer that question.

A. I told him that he had no business to. It had gone through Springfield, and I didn't see any other way, but

supposed the enterprise was going through and therefore let it stand, until afterward, they released me.

MR. McCULLOCH: I object to that part of the answer about releasing him, and move to strike that out. The motion was granted.

\*    \*    \*    \*    \*    \*    \*

Q. Now, Mr. Kesner, you may state whether or not you ever had any knowledge that your name was in any way connected or associated with this company? A. No way, except that he put my name on the charter. No, sir.

Q. As he told you? A. Yes, sir.

Q. Now, you say, he told you that he had put you down for so much stock? A. Yes, sir.

Q. Now, after he told you that, did you at any time have a conversation with him about it? A. Well, I told him that he had no business to put it down.

Q. After that, was there any conversation? A. After that he showed me the plans of the building, etc.; that was all I ever saw of it.

Q. Well, now, after that, what talk was had between you and the president of this company, if any? A. The last time I seen him was in the presence of these two men, when I told him to give the money back, and they came back and said he would not give it back, and I told them to have him arrested. That is the last time I ever saw him."

No propositions of law were ruled or offered.

Appellant asked leave to amend his answer to correspond with his testimony given upon the trial; this the court refused.

Appellant claimed to have been released from his obligation to take and pay for stock. As to this, the following appeared:

Counsel for appellant made the following statement:

" The fact, as I understand it, is, that Mr. Kesner said to Mr. Stock, 'if you have got my name down for this stock, give me the stock.' He said that several times. Mr. Stock never gave it to him, and he told him: 'Well, I will have nothing further to do with it in any shape or form. Whatever obligation I am under for this company, if you don't

give me. the stock, I want it canceled.'   And it was agreed between him and the president of the company, in the presence of all, I think all, the directors of the company, probably—I think only part of them, in Mr. Kesner's own office. I think that occurred during the month of April, 1893, and Kesner said, 'Well, your papers are down to Springfield, and I don't know what I can do,' and demanded this stock; demanded it repeatedly, and they refused to give it."

Trial by jury was waived and the cause submitted to the court.   The finding and judgment were in favor of appellee for $500 and costs of suit, from which judgment appellant prosecutes this appeal.

PERRY A. HULL, attorney for appellant.

PRUSSING & McCULLOCH, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The testimony of appellant shows him to have been a subscriber for ten shares of stock.

Courts incline, without reference to formality, where the intent to become a subscriber is manifested, to hold that the contract of subscription subsists.   Cook on Stock & Stockholders, etc., Vol. 1, Sec. 52.

Having thus become obligated, he could not, as against creditors of the corporation, be released by the mere consent of the company.

If appellant had, when informed that Stock had put his name down, repudiated such action, his position would have been very different.

Parties dealing with this corporation had a right to rely upon the evidence, which appellant knew existed at Springfield, that he had subscribed for ten shares of its stock.  Sec. 27, Chap. 32, R. S.; Kern v. Chicago Co-operative Brewing Ass'n, 40 Ill. App. 356; 140 Ill. 371.

The judgment of the Superior Court is affirmed.

MR. JUSTICE SHEPARD dissents.